1  Stevan   Dittmer
2  10720 S. Forest Drive
3  Colorado Springs, CO 80908

4                    UNITED STATES DISTRICT COURT
5                        DISTRICT OF COLORADO

6

**Stevan** Dittmer                           |   Case # 1:10-CV-01832-DME-KMT

Plaintiff,

        vs.                                  |   **MORE DEFINITE STATEMENT AS PER**
                                             |              **RULE 12**
**Deutsche Bank National Trust**

Defendant

7

8                                        Date: 09/10/10

9     Comes now  Stevan   W Dittmer, hereinafter referred to as "Plaintiff," and moves the court for

10    relief as herein requested:

11                                        **PARTIES**
12           Plaintiff is Stevan  W Dittmer, 10720 S. Forest Drive , Colorado Springs, CO 80908,

13    (Lot 5, South Forest Subdivision, according to the plat thereof recorded in Plat Book E-3, Pages

14    52, County of El Paso, State of Colorado)

15           Currently Known Defendant(s) are/is: Deutsche Bank National Trust, 1761 E Saint

16    Andrew Place, Santa Ana, CA 92705, by and through its attorney, Edward O"Brien, Hellerstein

17    and Shore, 5347 South Valentia St., Ste. 100, Greenwood Village, CO 80111, hereinafter

18    referred to as "Lender," or "Defendant(s)," "Defendant Lender."

19                                     **STATEMENT OF FACTS**
20           Plaintiff and seller engaged the services of Nik Hook, Equity One, 8350 E. Crescent

21    Pkwy, Ste 400, Greenwood Village, CO 80111 as a mortgage broker, hereinafter referred to as

22    "Broker," to assist Plaintiff in the refinancing of the property.

23           Plaintiff was referred to New Century Mortgage Corporation, 18400 Von Karman, Ste.

24    1000, Irvine, CA 92612, hereinafter referred to as "Lender," by Broker for the purpose of

25    refinancing the property.

26          Lender engaged the services of Jeanette Gallina, First American Heritage Title Co., 950

27    S. Cherry St. #1400, Denver, CO 80246, hereinafter referred to as "Closing Agent," to perform

28    the closing on the refinancing of the property.

29          On the 21th day of November, 2005, Plaintiff entered into a contract loan with Lender,

30    said contract is hereinafter referred to as the "note."

31          On the day of closing on the property, Closing Agent provided the Truth in Lending

32    Statement and Housing and Urban Development Form 1, otherwise known as the "settlement

33    statement."

34          At closing on the property, Lender assessed fees as listed on the settlement statement.

35          The fees assessed on the settlement statement were as follows:

| | | |
|---|---|---|
| 801 | Loan Origination Fee | $8,025.00 |
| 802 | Loan Discount | $8,025.00 |
| 803 | Appraisal | $50.00 |
| 808 | Tax Service Fee | $78.00 |
| 809 | Underwriting Fee | $399.00 |
| 810 | Processing Fee | $399.00 |
| 812 | Flood Certification Fee | $11.20 |
| 813 | Processing Fee | $861.00 |
| 901 | Interest | $279.24 |
| 1001 | Hazard Insurance | $1,089.00 |
| 1004 | County Property Taxes | $1,476.37 |
| 1101 | Settlement or closing fee | $240.00 |
| 1108 | Title Insurance Fee | $1,091.00 |
| 1111 | endorsement fee | $30.00 |
| 1303 | Release fee | $80.00 |
| 1304 | Courier fee | $75.00 |
| 1305 | Record DOT fee | $126.00 |

36

37          The fees assessed on the settlement statement were added to the principal on the note and

38    interest was charged to Plaintiff on said amounts.

39          Plaintiff provided to Lender, at the time of the consummation of the note, a document

40    which established a lien against the property.

41          Said lien document specifically stated that it was intended to protect Lender from loss if

42    Plaintiff failed to abide by the promises made in the note.

43          Within days after the consummation of the above referenced note, Lender traded the note

44    to an investor, hereinafter referred to as "Initial Investor," for consideration accepted (identity of

45    Initial Investor, at the time of the filing of this complaint is unknown to Plaintiff, but will be

46    provided subsequent to discovery).

47    At the sale of the note to Initial Investor, Lender bi-furcated the note and lien by retaining
48    possession of the lien while transferring possession of the note to Initial Investor.

49    Plaintiff was not noticed of said subsequent sales of the note.

50    The note was subsequently sold repeatedly to other parties who failed to properly register
51    said sales with the court recorder's office in the county in which the property lies.

52    After sale of the note, Lender became the servicer of the note, in that Lender contracted
53    with the Initial Investor who was the real party in interest on the note at the time of sale to collect
54    the monthly payments made on the note.

55    ## STATEMENT OF FACTUAL ACCUSATION

56    Plaintiff alleges and is prepared to prove at trial each of the following:

57    ### *FRAUD BY LENDER*

58    Lender conspired with the Broker, to induce Agent to violate Agent's fiduciary duty to
59    Plaintiff while acting as an agent for Plaintiff in securing funds to purchase a residential
60    property. *(Since all actors in a conspiracy act in pari delicto, and, thereby, are equally culpable*
61    *for the acts of each, Plaintiff did not name Agent, Appraiser, Underwriter, Closing Agent, et, as*
62    *said actors are not necessary parties. In the interest of judicial economy, Plaintiff only*
63    *specifically named the party presently claiming agency and standing to enforce the note. If said*
64    *defendant has reason to believe that others are liable, defendant is certainly free to cross-*
65    *complaint in order to lessen the potential financial burden on defendant.)*

66    Lender, in an act of fraud, represented the property, the current real estate market, the
67    loan product of Lender, and other conditions of the prospective purchase as far more favorable
68    than they actually were at the time said representations were made. Lender knew, or should have
69    known, that said representations were not accurate. Lender made said representations to Plaintiff
70    with the intent that Plaintiff make a decision to refinance. Plaintiff did not have equal access to
71    information as Lender. Lender knew, or should have known that if Plaintiff had full disclosure
72    of all the facts Plaintiff would have made a different decision than the decision Plaintiff made.
73    Plaintiff was subsequently harmed by the decision Plaintiff was fraudulently induced to make by
74    Lender.

### FAILED TO MAKE CONSPICUOUS DISCLOSURES

Broker, Appraiser, Closing Agent, and Lender failed to make all disclosures to Plaintiff clearly and conspicuously as required by 12 CFR 226.17(a). The above referenced defendants crafted disclosures in turgid and confusing language, laced with undefined terms of art (legalese) and grouped with many unnecessary and confusing documents for the purpose of rendering the disclosures unintelligible to a reasonable person of ordinary knowledge and understanding of the English language. The above referenced failure defrauded Plaintiff by effecting a lack of full disclosure to Plaintiff which unduly induced Plaintiff to enter into the contract herein referred to as the note.

### TRUTH IN LENDING STATEMENT NOT TIMELY

Lender failed to provide a Truth in lending statement at least three days before closing in violation of 12 CFR 226.31(c)(1).

### TERMS FOR THE NOTE CHANGED AT CLOSING

The terms for the note were changed at closing without prior notice to Plaintiff in violation of 21 CFR 226 (c)(1)(i).

### DISCLOSURES DID NOT REFLECT TERMS

The disclosures to provided Plaintiff by Lender did not accurately reflect the closing amounts and did not clearly state that the disclosures were estimates in violation of 12 CFR 226.31(d)(1).

### PER DIEM INTEREST NOT ACCURATELY DISCLOSED

Lender failed to provide documentation to show that the calculation of the per diem interest was true and accurate in violation of 12 CFR 226.3(a)(ii).

### FRAUD BY NON-DISCLOSURE BY LENDER

Lender, in acts of fraud by non-disclosure, advised Plaintiff of some of the costs associated with the loan. Lender assured Plaintiff that the loan product would be far less costly than defendants knew or should have known said loan product would turn out to be. Lender failed to provide full disclosure of the true nature of all the costs to Plaintiff. Lender knew that Plaintiff did not have equal access to information as Lender. Lender took unfair advantage of Plaintiff's expectation of good faith and fair dealings created by Lender's special status as a

104   company doing business under a license.   Plaintiff, acting in good faith reliance on
105   representations made by Lender, made the decision to purchase the Property. Plaintiff was
106   harmed as a result of the failure on the part of Lender to give full disclosure.

107   ***BREACH OF FIDUCIARY DUTY***

108       It is the specific allegation of Plaintiff that, Broker conspired with Lender to receive
109   commissions in excess of the 1% maximum allowed by the Real Estate Settlement Procedures
110   Act.  In order to help insure that Broker, while acting as agent for Plaintiff,  would act in good
111   faith toward Plaintiff and seek out the best loan product for Plaintiff.  Lender, acting in direct
112   violation of Regulation Z § 226.23 (12 C.F.R. § 226.23), extended a loan origination fee to
113   Broker in excess of the 1% allowed by law.  Broker, subsequently, in an act of "breach of
114   fiduciary duty," represented the note to plaintiff as the best loan available to Plaintiff.

115   ***IMPROPERLY CHARGED FEES***

116       Defendant(s), at closing, charged fees to Plaintiff that were intended to be included in the
117   finance  charge.  Defendant(s), instead of absorbing said costs as the normal part of doing
118   business, improperly assessed charges to Plaintiff, added said charges to the original principal,
119   and intended to charge plaintiff interest on said charges for the full term of the agreement.

120       Plaintiff was induced to accept the fees a genuine and proper because of the licensed
121   status of the closing agent.  Plaintiff, by virtue of said licensed status, had cause to hold a
122   reasonable expectation of good faith and fair dealings from Defendant agent, Lender, and closing
123   agent.

124       The amount of overpayment on the note Lender intended Plaintiff pay over the term of
125   the note would be in the amount of $230,760.46.

126       Said improper charges include, but are not limited to charges by third parties which are
127   not otherwise excluded under 12 CFR 226.4(a)(1)(i)).   Lender required the use of said third
128   parties as a condition of or an incident to the extension of credit which included, but is not
129   limited to charges for appraisers, inspectors, underwriters, and others to be determined
130   subsequent to discovery.

131   ***CONSPIRACY TO FALSE FEES***

132       It is the further allegation of Plaintiff that Lender charged false fees at closing which
133   were added to the original principal on which interest was charged.  It was intended that above

134  referenced costs be considered the normal part of doing business and be absorbed in the finance

135  charge. Instead, Lender added said fees to the head of the note, then used said fees to bribe

136  Broker to upsell *(convince the buyer to accept an artificially high priced loan product)* the note

137  to Plaintiff, thereby, charging Plaintiff for the bribes Lender used to defraud Plaintiff.  Instead of

138  absorbing said fees in the finance charge, Lender intended to charge interest on said fees for the

139  full term of the note.  Plaintiff was harmed by said act by being charged extra fees, thereby,

140  increasing the cost of the note.

141  ***UNDISCLOSED CLOSING AGENT RELATIONSHIP***

142      Defendant(s) added closing agent charges to the principal of the note, for services

143  required by the Lender and made by third party vendors who conducted the loan closing (12 CFR

144  226.4(a)(2)(i)).

145      Closing agent was selected by Lender.  Plaintiff was not adequately advised that Plaintiff

146  could select a closing agent of Plaintiff's choice.  Consequent to the above referenced failure to

147  give clear and conspicuous disclosures, Plaintiff was induced into accepting the closing agent as

148  a neutral and trustworthy professional.

149      By failing to fully disclose the ongoing financial relationship between the closing agent

150  and the Lender, Lender defrauded Plaintiff.

151  ***CONSPIRACY BETWEEN LENDER AND UNDERWRITER***

152      Lender further conspired with Underwriter in order to mislead Plaintiff by an improper

153  approval of a mortgage agreement that failed to meet the requirements of the Real Estate

154  Settlement Procedures Act, Truth in Lending Act, and various and sundry local, state, and federal

155  consumer protection laws.  Said violations as stipulated above, included the assessment of false

156  fees at closing.  The underwriter, acting as the alter ego of Lender, under the guise of checking

157  the note for propriety and correctness, unduly influenced Plaintiff into accepting all the fees

158  charged at closing as true, valid, and accurate.  The underwriter, acting as the alter ego of

159  Lender, acted with culpable knowledge of the impropriety of the false fees charged to Plaintiff,

160  or the underwriter acted with gross negligence.  The underwriter, acting as the alter ego of

161  Lender, defrauded Plaintiff by failing to disclose to Plaintiff that the fees charged to Plaintiff

162  were improper and in violation of standing law.  Lender knew, or should have known, that

163  Plaintiff would have made a different decision had underwriter done a proper job of checking the

164  legality and propriety of the note.   Plaintiff was harmed by the negligence or fraud of
165  underwriter.

### *CLOSING AGENT ALLOWED FALSE FEES*

167  Closing Agent, at closing, allowed the charging of false fees to Plaintiff which included
168  undisclosed markups on amounts charged by third party vendors.  Closing Agent, acting as
169  trustee, had a fiduciary duty to Plaintiff to insure that the closing documents were all in order.
170  The closing documents included fees to Plaintiff that were prohibited by law and had the effect
171  of defrauding Plaintiff.   Said undisclosed fees, which were a source of secret profit to Lender,
172  were then added to the principal for which Defendant(s) intended to charge Plaintiff interest for
173  the full term of the note in violation of 12 CFR 226.4(a)(1)(ii).

### *NOTICES WITHHELD TO DEFRAUD PLAINTIFF*

175  Lender, at and before settlement, failed to provide statutorily mandated notices to
176  borrower, by failing to provide each of the specific notifications listed herein, to include but not
177  limited to:

178  -   No HUD 1 Booklet provided within three days after the loan application was made to
179        the Lender;

180  -   Good Faith Estimate not timely provided;

181  -   Good Faith Estimate not accurate within specified limits;

182  -   No holder rule warning in note;

183  -   Right to rescind not clearly made;

184  -   Principal and interest on note not clearly highlighted or readily visible;

185  -   Failed to include the FTC Holder Warning (16 CFR 433) in the note document.

### *CONSPIRACY BETWEEN CLOSING AGENT AND LENDER*

187  Closing Agent conspired with Lender to create a condition at closing intended to deny
188  Plaintiff full disclosure by contriving to pressure Plaintiff into signing a multitude of documents
189  in a short and pressured time frame in order to prevent Plaintiff from having time to fully
190  understand the alleged disclosures and stipulations Plaintiff was induced to sign.

191     Closing Agent failed to insure that all documents were properly prepared and in
192     compliance with all relevant consumer protection laws.

193     Closing Agent intentionally pressured Plaintiff to read and attempt to understand a stack
194     of mostly irrelevant documents for the express purpose of rendering Plaintiff susceptible to
195     undue pressure to enter into a predatory loan product to the detriment of Plaintiff.

196     *UNDISCLOSED MARKUP*

197     Lender, at closing, while acting in concert and collusion with Underwriter andn Closing
198     Agent, assessed  undisclosed markups to Plaintiff over the amounts charged by vendors who
199     performed services connected with the loan closing and added said undisclosed markups to the
200     principal on which the above referenced defendants intended that Plaintiff  pay interest for the
201     term of the note (12 CFR 226.4(a)(2(ii)).

202     *BROKER FEE IMPROPERLY ADDED TO PRINCIPAL*

203     Lender, acting in concert and collusion with Underwriter and Closing Agent, assessed a
204     broker fee to Plaintiff at closing in the amount of $8025.00, and added said amount to the
205     principal of the note for which Defendant(s) intended to charge Plaintiff interest for the full term
206     of the note (see Special Rule 12 CFR 226.4(a)(3)).

207     *UNSUPPORTED CLAIM OF AGENCY BY LENDER*

208     The identity of the real party in interest on the promissory note alleged to have been
209     created by Plaintiff is unknown to Plaintiff.

210     Subsequent to Lender's failure to identify the real party in interest as contemplated by
211     Uniform Commercial Code 3-501, Lender is statutorily estopped from pursuing collection on the
212     promissory note alleged to have been created by Plaintiff as Plaintiff is authorized to cease all
213     payments without dishonor until such time as Lender complies with all tenants of the alleged
214     promissory note and all applicable law.

215     Lender entered into a sales contract with an as yet unknown party for the sale of the
216     promissory note alleged to have been created by Plaintiff yet failed to publicly record said sale
217     with the clerk of the court.

218     Lender, in the capacity of the current servicer of the alleged promissory note, claims
219     agency to act in the place of the real party in interest on the above referenced security instrument.

220         Plaintiff, at closing, was given a photocopy of the original note signed by Plaintiff.

221         Plaintiff, at the time of closing, bolstered by the state of false trust in the "trustee" and
222  others, was not noticed or aware that Lender could have produced multiple originals of the
223  promissory note document.

224         Lender took the original promissory note out of sight of Plaintiff and allegedly made a
225  true and accurate copy and provided said copy to Plaintiff.

226         With the current state of technology, there is no way for Plaintiff to tell if the copy
227  provided to Plaintiff by Trustee was a true and correct copy of the promissory note allegedly
228  signed by Plaintiff.

229         Lender then retained the only original of the promissory note signed by Plaintiff.

230         Lender, upon request of Plaintiff, has failed to produce the original promissory note
231  signed by Plaintiff for examination.

232         The failure of Lender to produce, for inspection, as contemplated by Uniform
233  Commercial Code 3-501, an original promissory note creates the adverse inference that no such
234  note is in the possession of Lender

235         Lender, or current servicer, has failed to prove that Lender is a true agent of the principal
236  holder of the above referenced security instrument.

237         Plaintiff has reason to believe and does believe that the security instrument does not exist
238  and was deliberately destroyed by an agent of the real party in interest.

239         To the knowledge of Plaintiff, there exists only photo copies of the original security
240  instrument that could have been easily altered to favor Lender with covenants not present in the
241  original signed by Plaintiff.

242  ***SECURITIZATION PRACTICES VOID CONTRACT***

243         The original note contained a provision for modification of the original loan agreement.

244         The modification provision of the note has been rendered unenforceable as there is no
245  one known to Plaintiff who has authority to authorize a modification of the original contract.

246    By secretly selling the note as a security instrument, Defendant(s) have nullified a
247    provision of the contract which authorizes modification of the note.

248    Plaintiff, having reason to believe that fraud was involved in the creation of the loan
249    instruments, has a claim against the real party in interest, and thereby, has need to know all
250    parties who have received enrichment from the proceeds of said security instrument.

251    In as much as, in the case of a security instrument created from a note which is the result
252    of a consumer transaction, there can be no holder in due course and, according to the Federal
253    Trade Commission Holder Rule, 16 CFR 433, and 12 CFR 226 (Regulation Z), the holder of the
254    such security instrument stands in the shoes of the Lender and is subject to any claim Plaintiff
255    would have on the Lender, Plaintiff has a right to know the identity of any person or entity
256    currently claiming, or who has ever claimed real party interest in said security instrument.

257    *NOTE POOLED AND LOST*

258    At a point in time unknown to Plaintiff, either prior to or subsequent to the close of
259    escrow on their respective loans, Defendants did place or caused to be placed the original
260    promissory note executed by Plaintiff into a pool with multiple other such notes.

261    Said pooled notes were sold to one or more investors through securitized transactions
262    without Plaintiff's knowledge or consent and to Plaintiff's detriment.

263    The above sale transactions were not filed in the public record of the clerk of the county.

264    The above referenced pooled notes were repeatedly resold to numerous other investors.

265    *AGENT LACKS AGENCY*

266    It is the belief and specific allegation of Plaintiff that the alleged agent for the lender is
267    not the agent for the lender, but rather, is an unauthorized intervener who merely claims agency
268    for the purpose of defrauding Plaintiff of Plaintiff's property.   It is the further belief and
269    allegation of Plaintiff that the alleged agent for the lender has no contract to with the real party in
270    interest on the note and, therefore, has no agency to represent said real party in interest.

271    *REAL PARTY IN INTEREST UNKNOWN AND UN-PROVABLE*

272    The above referenced security instrument was filed with Mortgage Electronic
273    Registration Services (hereinafter referred to as "MERS"); a company purportedly established

274  for the purpose of registering mortgage as a security instrument.  Plaintiff alleges that MERS
275  scanned the original security instrument into their electronic system, and then destroyed the
276  original security instrument.

277       The pooled notes that included Plaintiff's original contract became lost, either as a result
278  of deliberate intent or the misconduct of the investors to whom they were sold.   It has become
279  impracticable to the point of being impossible to trace the location, the possessor, or the actual
280  holders(s) of the original promissory note.

281  ***ASSIGNMENT OF NOTE IS FRAUD***

282       Plaintiff alleges and is prepare to prove at trial that the alleged assignment of standing to
283  enforce the note to Current Servicer is a fraud on the court as said instrument fails to identify the
284  real party in interest and does not contain evidence, affirmed and verified by the current principal
285  on the note granting agency to Current Servicer.

286       It is the assertion and allegation of Plaintiff that the alleged assignment presented by
287  Current Servicer, was not made by the real party in interest, but rather, by an employee of the
288  servicer bank, or some other person specifically designated to impersonate the real party in
289  interest. Therefore, it is the allegation of Plaintiff that the Current Servicer lack legal standing to
290  enforce the note and, therefore, are unable to invoke the subject matter jurisdiction of the court.

291  ***RESPA PENALTIES***

292       From a cursory examination of the records, with the few available, the apparent RESPA
293  violations are as follows:

294       Good  Faith Estimate not within limits

295       No HUD-1 Booklet

296       Truth In Lending Statement not within limits compared to Note

297       Truth in Lending Statement not timely presented

298       HUD-1 not presented at least one day before closing

299       No Holder Rule Notice in Note

300       No 1st Payment Letter

301    No signed and dated :

302            Financial Privacy Act Disclosure;

303            Equal Credit Reporting Act Disclosure;

304            notice of right to receive appraisal report;

305            servicing disclosure statement;

306            borrower's Certification of Authorization;

307            notice of credit score;

308            RESPA servicing disclosure letter;

309            loan discount fee disclosure;

310            business insurance company arrangement disclosure;

311            notice of right to rescind.

312    The courts have held that the borrower does not have to show harm to claim a violation

313    of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict

314    compliance.  And, in as much as the courts are directed to assess a penalty of no less than two

315    hundred dollars and no more than two thousand, considering the large number enumerated here,

316    it is reasonable to consider that the court will assess the maximum amount for each violation.

317    Since the courts have held that the penalty for a violation of RESPA accrues at

318    consummation of the note, borrower has calculated that, the number of violations found in a

319    cursory examination of the note, if deducted from the principal, would result in an overpayment

320    on the part of the borrower, over the life of the note, of $283,231.11.

321    If the violation penalty amounts for each of the unsupported fees listed above are

322    included, the amount by which the borrower would be defrauded is $291,817.70

323    Adding in RESPA penalties for all the unsupported settlement fees along with the

324    TILA/Note variance, it appears that lender intended to defraud borrower in the amount of

325    $805,809.27

326

327    ***LIEN IS VOID***

328    Lender sold the security instrument immediately after closing and received consideration
329    in an amount in excess of the lien held by Lender.

330    Since Lender retained the lien document upon the sale of the security instrument, Lender
331    separated the lien from said security instrument, creating a fatal and irreparable flaw.

332    When Lender received consideration while still holding the lien and said consideration
333    was in excess of the amount of the lien, Lender was in a position such that he could not be
334    harmed and could not gain standing to enforce the lien. The lien was, thereby, rendered void.

335    Since the separation of the lien from the security instrument creates such a considerable
336    concern, said separation certainly begs a question: "Why would the Lender retain the lien when
337    selling the security instrument?"

338    When you follow the money the answer is clear. The Lender will hold the lien for three
339    years, then file and IRS Form 1099a and claim the full amount of the lien as abandoned funds
340    and deduct the full amount from Lender's tax liability, thereby, receiving consideration a second
341    time.

342    Later, in the expected eventuality of default by Plaintiff, Lender then claimed to transfer
343    the lien to the holder of the security, however, the lien once satisfied, does not gain authority just
344    because the holder, after receiving consideration, takes possession of the lien document.

345    *LENDER PROFIT BY CREDIT FAULT SWAP DERIVATIVES*

346    Lender, as motivation for the above referenced fraud, further stood to profit by credit
347    fault swaps in the derivatives market, by way of inside information that Lender had as a result of
348    creating the faulty loans sure to default. Lender was then free to invest on the bet that said loan
349    would default and stood to receive unjust enrichment a third time. This credit default swap
350    derivative market scheme is almost totally responsible for the stock market disaster we now
351    experience as it was responsible for the stock market crash in 1907.

352    *TILA  AND RESPA SUBJECT TO EQUITABLE TOLLING*

353    The Limitations Period for Plaintiffs' Damages Claims under TILA and RESPA should
354    be Equitably Tolled due to the DEFENDANTS' Misrepresentations and Failure to Disclose.

355    Defendants Homecomings is correct to assert that claims for statutory and other money
356    damages under the Truth in Lending Act *(15 U.S.C. § 1601,* et. seq.) and under the Real Estate
357    Settlement Procedures Act *(12 U.S.C. § 2601* et. seq.) the time a claimant has to raise a claim
358    under RESPA is two years or until full disclosure.   The above allegations of fraud by non-
359    disclosure toll the limitations stipulated by Regulation Z § 226.23 (12 C.F.R. § 226.23).   Further,
360    such claims are subject to the equitable tolling doctrine. The Ninth Circuit has interpreted the
361    TILA limitations period in § 1640(e) as subject to equitable tolling. In *King v. California, 784*
362    *F.2d 910 (9th Cir.1986),* the court held that given the remedial purpose of TILA, the limitations
363    period should run from the date of consummation of the transaction, but that "the doctrine of
364    equitable tolling may, in appropriate circumstances, suspend the limitations period until the
365    borrower discovers or has reasonable opportunity to discover the fraud or nondisclosures that
366    form the basis of the TILA action." *King v. California, 784 F.2d 910, 915 9th* Cir. 1986).

367    Likewise, while the Ninth Circuit has not taken up the question whether *12 U.S.C. §*
368    *2614,* the anti-kickback provision of **RESPA,** is subject to equitable tolling, other Courts have
369    held that such limitations period may be equitably tolled. The Court of Appeals for the District of
370    Columbia held that § 2614 imposes a strictly jurisdictional limitation, *Hardin v. City Title &*
371    *Escrow Co., 797 F.2d 1037, 1039-40 (D.C. Cir. 1986),* while the Seventh Circuit came to the
372    opposite conclusion. *Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1164 (7th*
373    *Cir. 1997).* District courts have largely come down on the side of the Seventh Circuit in holding
374    that the one-year limitations period in § 2614 is subject to equitable tolling. See, e.g., *Kerby v.*
375    *Mortgage Funding Corp., 992 F.Supp. 787, 791-98 (D.Md.1998); Moll v. U.S. Life Title Ins. Co.,*
376    *700 F.Supp. 1284, 1286-89 (S.D.N.Y.1988).* Importantly, the Ninth Circuit, as noted above, has
377    interpreted the TILA limitations period in *15 U.S.C. § 1640* as subject to equitable tolling; the
378    language of the two provisions is nearly identical. *King v. California, 784 F.2d at 914.* While not
379    of precedential value, this Court has previously found both the TILA and **RESPA** limitations
380    periods to be subject to equitable tolling. *Blaylock v. First American Title Ins. Co., 504*
381    *F.Supp.2d 1091,* (W.D. Wash. 2007). 1106-07.

382    The Ninth Circuit has explained that the doctrine of equitable tolling "focuses on
383    excusable delay by the Plaintiff," and inquires whether "a reasonable Plaintiff would ... have
384    known of the existence of a possible claim within the limitations period." *Johnson v. Henderson,*
385    *314 F.3d 409, 414 (9th Cir.2002), Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th*

386    *Cir.2000).* Equitable tolling focuses on the reasonableness of the Plaintiff's delay and does not
387    depend on any wrongful conduct by the Defendants. *Santa Maria.* at 1178.

388    **CLAIM TO QUIET TITLE.**

389    Plaintiff properly averred a claim to quiet title. Plaintiff has set forth facts concerning the
390    title interests of the subject property. Moreover, as shown above, Plaintiff's claims for rescission
391    and fraud are meritorious. As such, Plaintiff's bases for quiet title are meritorious as well.

392    Defendants' claims are without any right, and Defendants have no title, estate, lien, or
393    interest in the Subject Property in that purported power of sale contained in the Deed of Trust is
394    of no force or effect because Defendants' security interest in the Subject Property has been
395    rendered void and that the Defendants are not the holder in due course of the Promissory Note.
396    Moreover, because Plaintiff properly pled all Defendants' involvement in a the fraudulent
397    scheme, all Defendants are liable for the acts of its co-conspirators,

398    "a Plaintiff is entitled to damages from those Defendants who concur in the tortious scheme with
399    knowledge of its unlawful purpose." *Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 157 Cal.*
400    *Rptr. 392, 598 P.2d 45 (1979); Novartis Vaccines and Diagnostics, Inc. v. Stop Huntingdon*
401    *Animal Cruelty USA, Inc., 143 Cal. App. 4th 1284, 50 Cal. Rptr. 3d 27 (1st Dist. 2006); Kidron v.*
402    *Movie Acquisition Corp., 40 Cal. App. 4th 1571, 47 Cal. Rptr. 2d 752 (2d Dist. 1995).*

403    **CAUSES OF ACTION**

404    ***BREACH OF FIDUCIARY DUTY***

405    Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
406    allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
407    Causes of Action as though the same were set forth herein.

408    Defendants Agent, appraiser, trustee, Lender, et al, and each of them, owed Plaintiff a
409    fiduciary duty of care with respect to the mortgage loan transactions and related title activities
410    involving the Trust Property.

411    Defendants breached their duties to Plaintiff by, *inter alia,* the conduct described above.
412    Such breaches included, but were not limited to, ensuring their own and Plaintiffs' compliance
413    with all applicable laws governing the loan transactions in which they were involved, including

414    but not limited to, TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated there
415    under.

416        Defendants' breaches of said duties was a direct and proximate cause of economic and
417    non-economic harm and detriment to Plaintiffs.

418        Plaintiff did, in fact, suffer economic and non-economic harm and detriment as a result of
419    such conduct, all to be shown according to proof at trial of this matter.

420    ***CAUSE OF ACTION - NEGLIGENCE/NEGLIGENCE PER SE***

421        Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
422    allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
423    Causes of Action as though the same were set forth herein.

424        Defendants owed a general duty of care with respect to Plaintiffs, particularly concerning
425    their duty to properly perform due diligence as to the loans and related transactional issues
426    described hereinabove.

427        In addition, Defendants owed a duty of care under TILA, HOEPA, **RESPA** and the
428    Regulations X and Z promulgated there under to, among other things, provide proper disclosures
429    concerning the terms and conditions of the loans they marketed, to refrain from marketing loans
430    they knew or should have known that borrowers could  not afford or maintain, and to avoid
431    paying undue compensation such as "yield spread premiums" to mortgage Agents and loan
432    officers.

433        Defendants knew or in the exercise of reasonable care should have known, that the loan
434    transactions involving Plaintiff and other persons similarly situated were defective, unlawful,
435    violative of federal and state laws and regulations, and would subject Plaintiff to economic and
436    non-economic harm and other detriment.

437        Plaintiff is among the class of persons that TILA, HOEPA, **RESPA** and the Regulations
438    X and Z promulgated there under were intended and designed to protect, and the conduct alleged
439    against Defendants and each of them is the type of conduct and harm which the referenced
440    statutes and regulations was designed to deter.

441        As a direct and proximate result of Defendant's negligence, Plaintiff suffered economic
442    and non-economic harm in an amount to be shown according to proof at trial.

443    ***COMMON LAW FRAUD***

444        Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every

445    allegation contained in all of the paragraphs of the General Allegations and Facts Common to All

446    Causes of Action as though the same were set forth herein.

447        If any Defendants misrepresentations made herein were not intentional, said

448    misrepresentations were negligent. When the Defendants made the representations alleged

449    herein, he/she/it had no reasonable ground for believing them to be true.

450        Defendants made these representations with the intention of inducing Plaintiff to act in

451    reliance on these representations in the manner hereafter alleged, or with the expectation that

452    Plaintiff would so act.

453        Plaintiff  is informed and believes that Defendant et al, facilitated, aided and abetted

454    various Defendants in their negligent misrepresentation, and that various Defendants were

455    negligent in not implementing procedures such as underwriting standards oversight that would

456    have  prevented  various  Defendants  from  facilitating  the  irresponsible  and  wrongful

457    misrepresentations of various Defendants to Defendants .

458        Plaintiff  is informed and believes that Defendant acted in concert along with other others

459    named herein in promulgating  false representations to cause Plaintiff  to enter into the LOAN

460    without knowledge or understanding of the terms thereof.

461        As a proximate result of the negligent misrepresentations of Defendants as herein alleged,

462    the Plaintiff  sustained damages, including monetary loss, emotional distress, loss of credit, loss

463    of opportunities, attorney fees and costs, and other damages to be determined at trial. As a

464    proximate result of Defendants' breach of duty and all other actions as alleged herein, Defendants

465    has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and

466    mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at

467    trial in excess of $2,405,885.04

468    ***FRAUD BY NON-DISCLOSURE***

469        Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every

470    allegation contained in all of the paragraphs of the General Allegations and Facts Common to All

471    Causes of Action as though the same were set forth herein.

472        Claimant made representation to Plaintiff that Claimant had authority to exercise

473     foreclosure on the deed of trust and mortgage note agreement entered into between Claimant and

474     Plaintiff.

475        Claimant not the real party in interest of the mortgage note upon authority of which

476     Defendants claimed authority.

477        Defendant had a duty to reveal to Plaintiff that Claimant was not the real party in interest

478     of the security interest that would give Claimant standing to foreclose on the property at issue.

479        The fact that Claimant was not the real party in interest of the mortgage note was

480     material to standing of Defendants to exercise the authority Defendants claimed.

481        Plaintiff was ignorant of the fact that Claimant was not the real party in interest of the

482     necessary security interest, neither did Plaintiff have equal opportunity to discover the fact of the

483     sale of the security interest by Claimant.

484        Claimant was deliberately silent when they had a duty to speak.

485        By failing to disclose the above referenced facts, Claimant intended that Plaintiff should

486     rely on Claimants claimed authority to sell the personal property of.

487        Plaintiff relied on Claimant's nondisclosure and was injured as a result of acting without

488     the knowledge of the undisclosed facts.

489     ***FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.***

490        Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every

491     allegation contained in all of the paragraphs of the General Allegations and Facts Common to All

492     Causes of Action as though the same were set forth herein.

493        Plaintiff properly pled Defendant(s) violated the breach of implied covenant of good faith

494     and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in

495     its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261*

496     *Cal. Rptr. 735 (1989);* Rest.2d Contracts § 205. A mortgage Agent has fiduciary duties. *Wyatt v.*

497     *Union Mortgage Co., (1979) 24 Cal. 3d. 773.* Further, In *Jonathan Neil & Associates, Inc. v*

498     *Jones, (2004) 33 Cal. 4th 917,* the court stated:

499        In the area of insurance contracts the covenant of good faith and fair dealing has taken on

500     a particular significance, in part because of the special relationship between the insurer and the

501     insured. The insurer, when determining whether to settle a claim, must give at least as much

502 consideration to the welfare of its insured as it gives to its own interests. . . The standard is
503 premised on the insurer's obligation to protect the insured's interests . . . *Id. at 937.*

504   Likewise, there is a special relationship between an agent and borrower. "A person who
505 provides services to a borrower in a covered loan transaction by soliciting Lenders or otherwise
506 negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this
507 fiduciary duty [is owed] to the consumer regardless of whom else the agent may be acting as an
508 agent for . . . The fiduciary duty of the agent is to deal with the consumer in *good faith.* If the
509 *Agent knew or should have known that the Borrower will or has a likelihood of defaulting ... they*
510 *have a fiduciary duty to the borrower not* to place them in that loan." (California Department of
511 Real Estate, *Section 8: Fiduciary Responsibility,* www.dre.ca.gov). [*Emphasis Added*].

512   All Defendant(s), willfully breached their implied covenant of good faith and fair dealing
513 with Plaintiff when Defendant(s): (1) Failed to provide all of the proper disclosures; (2) Failed to
514 provide accurate Right to Cancel Notices; (3) Placed Plaintiff into the current loan product
515 without regard for other more affordable products; (4) Placed Plaintiff into a loan without
516 following proper underwriting standards; (5) Failed to disclose to Plaintiff that Plaintiff was
517 going to default because of the loan being unaffordable; (6) Failed to perform valid and /or
518 properly documented substitutions and assignments so that Plaintiff could ascertain her rights
519 and duties; and (7) Failed to respond in good faith to Plaintiff's request for documentation of the
520 servicing of her loan and the existence and content of relevant documents. Therefore, due to the
521 special relationship inherent in a real estate transaction between Agent and borrower, *and* all
522 Defendant(s) participation in the conspiracy.

523 ### *CAUSE OF ACTION VIOLATION OF TRUTH IN LENDING ACT 15 U.S.C. §1601 ET*
524 ### *SEQ*

525   Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every
526 allegation contained in all of the paragraphs of the General Allegations and Facts Common to All
527 Causes of Action as though the same were set forth herein.

528   This consumer credit transaction was subject to the Plaintiff's right of rescission as
529 described by *15 U.S.C. § 1635*(a) and Regulation Z § 226.23 (12 C.F.R. § 226.23).

530    More particularly, the same Defendants violated *15 U.S.C. § 1635*(a) and
531    Regulation Z § 226.23(b) with regards to the purported Notice of Right to Cancel. As a
532    consequence of this action, the Notice of Right to Cancel documentation was not provided
533    to Plaintiff or if furnished, to Plaintiff it failed to: Correctly identify the transaction;
534    Clearly and conspicuously disclose the Plaintiff's right to rescind the transaction three days
535    after delivery of all required disclosures; Clearly and conspicuously disclose how to
536    exercise the right to rescind the transaction, with a form for that purpose; Clearly and
537    conspicuously disclose the effects of rescission; Clearly and conspicuously disclose the
538    date the rescission period expired.

539    Furthermore, Plaintiff is informed and believes that Defendants violated TILA at
540    the time of origination because, among other things: Multiple GFE's used to mislead and
541    confuse borrower about actual terms of Notes with yield spread premium paid outside
542    closing and additional unknown amounts in YSP/POC fees.

543    Plaintiff is informed and believes that Defendants's violation of the provisions of law
544    rendered the credit transaction null and void, invalidates Defendants's claimed interest in the
545    Subject Property, and entitles Plaintiff to damages as proven at trial.

546    ***INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS***

547    The conduct committed by Defendants, driven as it was by profit at the expense of
548    increasingly highly leveraged and vulnerable consumers who placed their faith and trust in the
549    superior knowledge and position of Defendants, was extreme and outrageous and not to be
550    tolerated by civilized society.

551    Defendants either knew that their conduct would cause Plaintiff to suffer severe
552    emotional distress, or acted in conscious and/or reckless disregard of the probability that such
553    distress would occur.

554    Plaintiff did in fact suffer severe emotional distress as an actual and proximate result of
555    the conduct of Defendants as described hereinabove.

556    As a result of such severe emotional distress, Plaintiff suffered economic and non
557    economic harm and detriment, all to be shown according to proof at trial of this matter.

558    Plaintiff demands that Defendants provide Plaintiff with release of lien on the lien signed
559    by Plaintiff and secure to Plaintiff quite title;

560    Plaintiff demands Defendants disgorge themselves of all enrichment received from
561    Plaintiff as payments to Defendants based on the fraudulently secured promissory note in an
562    amount to be calculated by Defendants and verified to Plaintiff;

563    Plaintiff further demands that Defendants pay to Plaintiff an amount equal to the amount
564    Defendants intended to defraud Plaintiff of which amount Plaintiff calculated to be equal to
565    $2,405,885.04

566                              **SUFFICIENCY OF PLEADING**

567    Plaintiff has sufficiently pled that relief can be granted on each and every one of the
568    Complaint's causes of action. Federal Rule of Civ. Procedure 12(b)(6) provides for dismissal if a
569    Plaintiff fails to state a claim upon which relief can be granted. A complaint should not be
570    dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support
571    of her claim which would entitle her to relief." *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400,*
572    *401.* "All allegations of material fact in the complaint are taken as true and construed in the light
573    most favorable to Plaintiff." *Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996).*

574    Attendant, the Complaint includes a "short, plain statement, of the basis for relief." Fed. Rule Civ.
575    Proc. 8(a). The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal
576    theories, and seeks remedies to which Plaintiff is entitled.   *Balistreri v. Pacifica Police Dept., 901 F.2d*
577    *696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986).* Moreover, the legal
578    conclusions in the Complaint can and should be drawn from the facts alleged, and, in turn, the court
579    should accept them as such. *Clegg v. Cult Awareness Network, 18 F.3d 752* (9th Cir, 1994). Lastly,
580    Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of
581    their claim entitling them to relief. *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* Therefore,
582    relief as requested herein should be granted.

583                                        **PRAYER**
584    WHEREFORE, Plaintiff prays for judgment against the named Defendants, and each of
585    them, as follows:

586    For quite title to Property;

587    For rescission of the loan contract and restitution by Defendants to Plaintiff according to
588    proof at trial;

589        For disgorgement of all amounts wrongfully acquired by Defendants according to proof

590  at trial;

591        For actual monetary damages in the amount of $805,809.27;

592        For pain and suffering due to extreme mental anguish in an amount to be determined at

593  trial.

594        For pre-judgment and post-judgment interest according to proof at trial;

595        For punitive damages according to proof at trial in an amount equal to $2,405,885.04;

596        For attorney's fees and costs as provided by statute; and,

597        For such other relief as the Court deems just and proper.

598

599  **Respectfully**

600

601  **Stevan  W  Dittmer**

602

603

604

605

606

607

608

609

610

611

612

613

614

615

616

617

618

619

620
621
622
623
624
625
626                               **CERTIFICATE OF SERVICE**
627
628    I, Stevan W Dittmer do swear and affirm that I have served a signed copy of this More Definite

629    Statement as Per Rule 12 to any and all defendants by way of U.S.P.S. Certified mail # and

630    return receipt and Regular Mail.

631    Deutsche Bank National Trust – CM#7010 0780 0001 7839 2780

632    Hellerstein and Shore - CM#7010 0780 0001 7839 2803

633

634

635    _____

636    Stevan   Dittmer
637    10720 S. Forest Drive
638    Colorado Springs, CO  80908
639

640

641            The Person above, who proved to me on the basis of satisfactory evidence to be the

642    person whose name is subscribed to this document and acknowledged to me that he/she

643    executed the same in his authorized capacity and that by his signature on this instrument who

644    is the person who executed this instrument.

645            I certify under PENALTY OF PERJURY under the laws of this state that the foregoing

646    paragraph is true and correct.

647

648    Witness my hand and official seal.

649

650    _____   9-10-10      _____

651            **NOTARY PUBLIC IN AND FOR**                    **Notary Seal**
652            **THE STATE OF COLORADO**

653

654

655

656

657

658

659